## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DENICE MORGAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETE GEREN, Acting Secretary of the Air Force,[1] | ) | Civil Action No.:   05-0967 (RMC) |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS,
## OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Pete Geren (formerly Michael L. Dominguez), Acting Secretary of the Air Force, in his official capacity, through the undersigned counsel, respectfully moves to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment under Rule 56(c).  Plaintiff's claims under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. (APA), are not only barred by the statute of limitations, but also fail to state a claim upon which relief can be granted.  Alternatively, there are no genuine issues in dispute and Defendant is entitled to judgment as a matter of law.  In support of this motion, Defendant submits the accompanying Memorandum of Points and Authorities, Statement of Material Facts Not In Genuine Dispute, and the Administrative Record of the Air Force Board for Correction of Military Records (AFBCMR).  A proposed order consistent with the relief requested herein is also attached.

---

[1]  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Pete Geren, Acting Secretary of the Air Force should be automatically substituted as the defendant in this action in place of his predecessor in office, Michael Dominguez.

September 20, 2005                    Respectfully submitted,


/s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


/s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
555 4th Street, N.W. - Civil Division
Washington, D.C.  20530
(202) 514-7220

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DENICE MORGAN | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| PETE GEREN, Acting Secretary of the Air Force,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No.:  05-0967 (RMC)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Pete Geren (formerly Michael L. Dominguez), Acting Secretary of the Air Force, in his official capacity, through the undersigned counsel, respectfully moves to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment under Rule 56(c).

Plaintiff Denice Morgan brings the above-captioned action, requesting that this Court reverse a decision of the Air Force Board for Correction of Military Records ("AFBCMR") and order Defendant to promote Plaintiff to the rank of senior master sergeant. Compl. ¶ 24. For the reasons set forth below, this suit should be dismissed for lack of subject matter jurisdiction, as Plaintiff's claims are barred by the statute of limitations. In addition, Plaintiff's claims for retroactive promotion fail to state a claim upon which relief can be granted. In the alternative, summary judgment should be granted for Defendant because there are no genuine issues in

---

[1]  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Pete Geren, Acting Secretary of the Air Force should be automatically substituted as the defendant in this action in place of his predecessor in office, Michael Dominguez.

dispute and Defendant is entitled to judgment as a matter of law.

## BACKGROUND

Plaintiff Denice Morgan, a former active duty member of the United States Air Force ("Air Force"), retired in the rank of master sergeant (E-7) on August 1, 1995. Compl. ¶ 3; AR[2] at 3.

The Air Force employs a point system for promotion selection. In order to be promoted, a promotion board convenes each year to consider those eligible for promotion in a career field. AR at 282, 288. An overall promotion score is calculated, using a combination of (a) a weighted score using quantifiable and objective criteria and (b) a board score, which is based upon a subjective review of a service member's total record by members sitting on the promotion board. Compl. ¶ 7; AR at 284-87.

Individuals' board scores may vary between panels from year to year. AR at 288. All individuals competing within a field are reviewed by a single panel, and all of their records are evaluated under the same standard. The numerical score given by a panel is not significant. Rather, an individual's relative position compared to others within their career field affects whether or not he or she is promoted. Id.

After the board finishes scoring all records, the weighted factor scores are combined with the board scores, and the scores are listed in order of merit. The overall promotion quota is then applied to the list. AR at 288. A member is selected for promotion if his or her overall promotion score is within the established quota. The scores below the quota are not selected for

---

[2] Citations to "AR at ___" refer to the administrative record of the Air Force Board for Correction of Military Records filed simultaneously with this brief.

promotion.  Compl. ¶ 7.

In 1992, Plaintiff was considered, but not selected, for promotion to senior master sergeant (E-8) for cycle 93S8 (hereinafter the 93S8 board).  Compl. ¶ 6.  The overall score required for promotion in the First Sergeant career field was 706.64.  Plaintiff's record received a weighted score of 317.73 and a board score of 367.50, for an overall promotion score of 685.23.  Thus, Plaintiff was 21.4 points below the cutoff score.  Compl. ¶ 8; AR at 24, 304.  Plaintiff's board score at the 93S8 board was 30 points lower than the 397.50 board score she received in 1991 at the 92S8 board.  Compl. ¶ 13; AR at 19.  Plaintiff then began contacting the Secretary of the Air Force and members of Congress questioning the fairness of the 93S8 board.  See, e.g., Compl. ¶¶ 9, 10.

In one of these requests, in June 1993, Plaintiff blamed her nonselection for promotion to E-8 on "institutionalized racial and sexual discrimination" in the Air Force promotion system, and she asked Congressman Ronald V. Dellums for a congressional inquiry.  AR at 80-81.  Congressman Dellums then sent an inquiry to the Air Force regarding Plaintiff's allegation.  See AR at 82.

By letter dated August 18, 1993, the Department of Defense, Office of the Inspector General ("DoD/IG"), informed Congressman Dellums that the Air Force had previously conducted two inquiries on behalf of Plaintiff.  AR at 82.  The first inquiry found that Plaintiff voluntarily left the First Sergeant career field[1] after receiving two counselings between February and April 1992 for poor performance and being given the option of voluntarily leaving the First

_____

[1]  On June 2, 1992, Plaintiff requested release from the First Sergeant career field.  AR at 64.  Her request was approved.  AR at 77.

3

Sergeant career field or being involuntarily removed.  AR at 82-83.  The second inquiry

concerning her allegations of race and gender discrimination found that an officer had made an

inappropriate remark in the presence of Plaintiff, which resulted in the officer's removal from

Plaintiff's rating chain.  The inquiry did not substantiate any of Plaintiff's other allegations.  AR

at 83.  DoD/IG informed the Congressman that it reviewed both inquiries and found them

"thorough and objective."  Id.  In addition, DoD/IG reviewed Plaintiff's complaint regarding her

nonselection for promotion by the 93S8 board and a technical review found Plaintiff's board

score to be correct.  "The review concluded that, although her 1992 score [at the 93S8 board] had

declined, her overall standing was not affected in that she was ranked 130th among 938 eligibles

in 1991 [at the 92S8 board] and 134th among 985 eligibles in 1992 [at the 93S8 board]."  AR at

84.  The response also stated that if Plaintiff wished to appeal her nonselection for promotion,

she could petition the Air Force Board for Correction of Military Records (AFBCMR).  Id.

       In September 1993, Plaintiff applied for relief to the Air Force Board for Correction of

Military Records ("AFBCMR").  She alleged that her nonselection for E-8 at the 93S8 board was

the result of improper scoring, sabotage, or unjust administrative error.  AR at 30.  She also

alleged that she had been coerced into leaving the First Sergeant career field.  AR at 34-38.  For

relief, Plaintiff requested that her nonselection be overturned and that she be retroactively

promoted to E-8 with back pay as of the 93S8 board.  Id.  The AFBCMR denied her request in

December 1993, finding "[i]nsufficient evidence has been presented to demonstrate the existence

of probable error or injustice."  AR at 27.

       According to the AFBCMR, there was no evidence that Plaintiff's records had been

improperly scored, and a thorough review of the 93S8 board's promotion process indicated that

Plaintiff's records were correct at the time she was considered for promotion.  Moreover,

Plaintiff's past promotion board scores were found to be irrelevant to her 93S8 board score, as

scores vary substantially among different promotion boards.  See AR at 27-28.  Citing the 1992

technical review of the 93S8 board, the AFBCMR also noted that Plaintiff's relative standing to

other promotion eligibles did not dramatically change from the 92S8 board to the 93S8 board.

See AR at 28, 315.  The AFBCMR concluded that in the absence of evidence that Plaintiff was

denied fair and equitable consideration for promotion to E-8 at the 93S8 board, it could not

recommend favorable consideration of her request for retroactive promotion.  AR at 28.

By letter dated June 15, 1994, Plaintiff requested an urgent meeting with the Secretary of

the Air Force regarding the impropriety of the AFBCMR's action on her case, as well as the

sabotaging of her promotion and the sexual harassment/discrimination she allegedly had endured.

AR at 447.  The Executive Director of the AFBCMR, C. Bruce Braswell, responded to Plaintiff

on June 21, 1994, and informed Plaintiff that her concerns already had been exhaustively

reviewed by the Air Force and the Department of Defense and that no evidence was found to

support her allegation that she was denied fair and equitable consideration for promotion to E-8

or forced out of the First Sergeant career field.  AR at 454.  The response stated that the

AFBCMR could reopen her case only upon the presentation of new relevant evidence.  Id.

At the request of Congressman Floyd D. Spence, the Air Force convened a special

evaluation board in December 1996 to determine Plaintiff's relative position when compared

with other members who experienced a 30-point or greater drop in their board scores between the

92S8 and 93S8 boards. The special evaluation board reviewed 78 records using the same

procedures as a regular evaluation board and scored Plaintiff's record at 390.00.  Compl. ¶¶ 11-12, 14-16; AR at 13; 466, 518-19.

Based on these results of the special evaluation board, Plaintiff submitted another application for relief to the AFBCMR in January 1998.  She requested retroactive promotion to E-8 as if selected by the 93S8 board, reinstatement into the First Sergeant career field, removal of the stigma from her career, and the option of being reinstated to the Air Force.  Compl. ¶¶ 5; 18; AR at 9.

The Air Force Personnel Center's Enlisted Promotions & Military Testing Branch provided an advisory opinion on the promotion issue to the AFBCMR.[3]  AR at 466-67.  The advisory opinion noted that when the special evaluation board was convened to determine Plaintiff's relative position compared to other members also experiencing a 30-point board score drop between the 92S8 and 93S8 boards, she received a board score of 390.00.  This placed her record in the top 23% of the 78 records reviewed.  AR at 466.  By comparison, of the 131 records experiencing a 30-point or greater drop between the 92S8 and 93S8 boards, 29 of the records received 93S8 board scores that were equal to or higher than Plaintiff's 93S8 board score of 367.50.  This placed her record in the top 22% of these 131 records.  Id.  The opinion stated that because the records reviewed by the special evaluation board did not include all of the 985 records constituting the entire First Sergeant career field population that were scored at the 93S8 board, Plaintiff's special evaluation board score of 390.00 could not be used to assert a higher

_____

[3] An advisory opinion was also provided to the AFBCMR on the issue of Plaintiff's reinstatement as First Sergeant.  AR at 468.  The opinion concluded that since Ms. Morgan was voluntarily released from the First Sergeant career field, if she was still on active duty, she could request reinstatement.  Id.

position than the 61 percent of records who scored equal to or higher than Plaintiff for the 93S8

board.  Id.  According to the advisory opinion, "[t]he fact that her record ended up in virtually the

same position among the group of records reviewed by this [special evaluation board] panel

affirms the relativity which was established by the original 93S8 board."  Id.  The advisory

opinion concluded that "the results of this special evaluation panel only served to further validate

the fairness and accuracy of the original 93S8 board."  AR at 467.

In a memorandum to the AFBCMR dated March 18, 1998, Plaintiff responded to the

advisory opinion, asserting that the special evaluation board demonstrated that her record had

been unfairly evaluated at the 93S8 board, and that she should be retroactively promoted to E-8.

AR at 470-74.

On April 29, 1998, the AFBCMR completed its reconsideration of Plaintiff's case and

denied her application for records correction.  Compl. ¶ 19; AR at 2-8.  The AFBCMR concluded

that "[i]nsufficient relevant evidence has been presented to demonstrate the existence of either an

error or injustice warranting favorable action on [Ms. Morgan's] request . . ."  AR at 7.  The

AFBCMR stated:

> We find the extraordinary actions by the Air Force in convening an
> unofficial evaluation board to evaluate certain records of those
> individuals who had received a 30-point decrease in points
> between the 92S8 and 93S8 cycles extremely troublesome.  And,
> had the applicant attained the highest score of the records scored by
> this mock board, we may have reached an entirely different result.
> However, after carefully reviewing the scores of the 78 records that
> were evaluated, we are not persuaded the score received by the
> applicant results in the inescapable conclusion that she should have
> received a sufficient score to have been a selectee for senior master
> sergeant during the 93S8 cycle.  As noted by the Air Force, her
> receipt of a 390 score by the mock evaluation board placed her in
> the top 23% of the 78 records scored.  By comparison, of the 131
> records experiencing a drop in board score of 30 points or more

> between the 92S8 and 93S8 boards, 29 of the original 93S8 board scores were equal to, or higher than, the applicant's 367.50. Furthermore, because the makeup of the review group records did not include the entire First Sergeant population for the 93S8 cycle (985 records), the 390.00 score she received by this panel cannot be used to assert a higher position than among the top 61% for the 93S8 board (there were 534 or 54% who had a higher board score than applicant's 367.50 and 65 or 7% who had the same board score as she). The fact that her record ended up in virtually the same position among the group of records reviewed by this panel affirms the relativity which was established by the original 93S8 board.

Id.

According to the AFBCMR, Plaintiff was treated no differently than any other member who competed for promotion at the 93S8 board and there was no evidence that her records were improperly or inaccurately scored. Id. Furthermore, the AFBCMR found that Plaintiff failed to submit "one shred of evidence" to indicate that the 93S8 panel members did not perform their sworn duty of serving without prejudice or partiality. Thus, "to promote the applicant based solely on supposition would be grossly unfair to the hundreds of senior enlisted members that have received variances in scores between promotion cycles in the past." Id.

After the AFBCMR denied her request for relief, Plaintiff, her attorney, and members of Congress asked the Secretary of the Air Force to intervene in her case. AR at 505-07, 523-24, 531-33, 535-36, 573-74, 590-91, 643, 694. These requests were denied since Plaintiff's case had previously been adjudicated by the AFBCMR. AR at 529-30, 534, 575, 592, 637. Specifically, on May 18, 1999, the Executive Director of the AFBCMR responded to one of Plaintiff's counsel's requests for additional information. Compl. ¶ 21; AR at 545-46. The response informed Plaintiff's counsel at the time, Ward K. Johnson, that:

8

> . . . as we previously informed you, the Air Force's position is the special evaluation board was convened solely to determine MSgt Morgan's relative position compared to other master sergeants considered for promotion by the original promotion board who had experienced a drop in board score of 30 points or more between the 92S8 and the 93S8 promotion cycles.
>
> In view of the foregoing, and in the absence of clear-cut evidence the special evaluation board was convened to officially provide reconsideration for promotion to MSgt Morgan, at the exclusion of the other nonselectees who experienced similar decreases in board scores by the same board panel, further consideration of her case is not warranted.

AR at 546.

On June 9, 2003, Plaintiff wrote a letter to James G. Roche, Secretary of the Air Force, asking for help with her case and alleging that the AFBCMR was in "Contempt of Congress" by denying her request for retroactive promotion.  Plaintiff also alleged misconduct by Mr. Burton, the Executive Director of the AFBCMR, because he "deceived/manipulated" of two former Secretaries of the Air Force as to the merits of Ms. Morgan's promotion request.  Compl. ¶ 22; AR at 573-74.

On July 9, 2003, Mr. Burton responded to Plaintiff's letter to Secretary Roche.  AR at 575.  The response stated that it would be inappropriate for anyone to unilaterally intervene on her behalf, and since there was the absence of any new relevant evidence, further review of her case was not possible.  Id.  Additionally, on September 4, 2003, Michael L. Dominguez, Assistant Secretary of the Air Force for Manpower and Reserve Affairs, responded to Plaintiff.  Mr. Dominguez informed Plaintiff that there was no basis to set aside either the 1993 AFBCMR decision or its 1998 reconsideration decision, as both panels of the AFBCMR considered all available evidence and conscientiously acted on her case.  AR at 577.

9

Plaintiff continued to make repeated similar requests of members of Congress and of the Secretary of the Air Force, <u>see</u> AR at 578, 638, 693-95, 705, and in March 2005, she again asked the AFBCMR to reconsider its April 1998 decision.  The AFBCMR denied Plaintiff's request for reconsideration in April 2005, stating that the documents provided by Plaintiff failed to meet the criteria for reconsideration.  AR at 704.

Plaintiff filed a complaint in this Court on May 16, 2005, alleging that the decision not to grant her retroactive promotion to E-8 was arbitrary and capricious, an abuse of discretion, and contrary to law.  Compl. ¶ 24.  Plaintiff's request for relief seeks that the Court (a) order her promotion to senior master sergeant as if she had been selected for promotion by the 93S8 selection board and (b) grant such other and further relief as the Court deems just and proper. Compl. at p. 5.

## STANDARD OF REVIEW

**I.      Motion to Dismiss (Fed.R.Civ.P. 12(b)(1) and 12(b)(6))**

Defendant moves for dismissal under Rule 12(b)(1), as the Court lacks jurisdiction over the subject matter, and Rule 12(b)(6), as Plaintiff fail to state a claim upon which relief can be granted.  "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  <u>Thompson v. Capitol Police Board</u>, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  <u>Rann v. Chao</u>, 154 F. Supp.2d 61, 64 (D.D.C. 2001), <u>aff'd</u>, 346 F.3d 192 (D.C. Cir. 2003), <u>cert. denied</u>, 125 S.Ct. 35 (Oct. 4, 2004).  In addition, "[on] a motion

10

to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp.2d at 81.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in either of two ways. First, the court may determine the motion based solely on the complaint. Herbert v. National Acad. Of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.; Rann, 154 F. Supp.2d at 64.

Furthermore, a motion to dismiss brought pursuant to Rule 12(b)(6) should be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports his claim entitling him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000). Although the plaintiff is given the benefit of all inferences that reasonably can be derived from the facts alleged in the complaint, the court need not accept inferences that are not supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the form of factual allegations. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## II.    Summary Judgment (Fed.R.Civ.P. 56)

Under Rule 56, summary judgment is required when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A genuine issue of material fact is

11

one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc, 477

U.S. 242, 243 (1986).  While all evidence and the inferences drawn therefrom must be

considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the

moving party submits "affirmative evidence that negates an essential element of the nonmoving

party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish

an essential element of the nonmoving party's claim."  Celotex, 477 U.S at 331.[3]  The

nonmoving party has the burden of establishing more than the "mere existence of a scintilla of

evidence" demonstrating a genuine issue in dispute for purposes of defeating the moving party's

motion.  See Lester v. Natsios, 290 F.Supp.2d 11, 19-20 (D.D.C. 2003), citing Anderson v.

Liberty Lobby, Inc., 477 U.S. at 255.  "[M]atters of law rather than of fact" may be presented for

summary judgment.  Douglas v. First Nat'l Realty Corp., 437 F.2d 666, 669 (D.C. Cir. 1970).

## III.    Standard of Review of a Decision of the AFBCMR

The APA, the gravamen of Plaintiff's Complaint, allows judicial review for those

adversely affected by agency action except to the extent that "(1) statutes preclude judicial

review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

Section 702 states that, "[a] person suffering legal wrong because of agency action, or adversely

affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

---

[3]  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed.Rule Civ.Proc. 56(e)).  Therefore, even if Plaintiff's claim were not dismissed under Rule 12(b)(1) or 12(b)(6), Plaintiff's failure to meet the Rule 56 standard of review by not providing any factual evidence sufficient to prove the elements of his claim will justify summary judgment as a matter of law.

judicial review thereof." 5 U.S.C. § 702. Section 706(2) adds that the reviewing court should set

aside and hold unlawful, any agency action or conclusion which is found to be arbitrary,

capricious, contrary to law, or not supported by substantial evidence. 5 U.S.C. § 706(2).

 Judicial review of a military correction board decision is under an "unusually deferential

application of the 'arbitrary and capricious' standard of the APA." Musengo v. White, 286 F.3d

535, 538 (D.C. Cir. 2002), (quoting Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1514

(D.C. Cir. 1989)); see Kidwell v. Dep't of the Army, Bd. For Corr. Of Military Records, 56 F.3d

279, 286 (D.C. Cir. 1995); Cargill v. Marsh, 902 F.2d 1006, 1008 (D.C. Cir. 1990); Viles v. Ball,

872 F.2d 491, 495 (D.C. Cir. 1989) (such review is "exceptionally deferential"). "This

deferential standard is calculated to ensure that the courts do not become a forum for appeals by

every soldier dissatisfied with his or her ratings, a result that would destabilize military command

and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793

(D.C. Cir. 2000) (citing Orloff v. Willoughby, 345 U.S. 83, 94, 97 L. Ed. 842, 73 S. Ct. 534

(1953). Thus, courts should set aside only the "most egregious" AFBCMR decisions. Kreis, 866

F.2d at 1514.

 The function of a court is not "to serve as a super correction board and reweigh the

evidence." Walker v. Shannon, 848 F. Supp. 250, 255 (D.D.C. 1994). Rather, a court should

only determine whether the decision is based on substantial evidence. Nihiser v. White, 211 F.

Supp. 2d 125, 130 (D.D.C. 2002) (quoting Heisig v. United States, 719 F.2d 1153, 1157 (Fed.

Cir. 1983). Substantial evidence is defined as "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Smith v. Dalton, 927 F. Supp. 1, 5 (D.D.C.

1996) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). The AFBCMR's decision

must be upheld if "the agency has articulated 'a rational connection between the facts found and the choice made.'" Kisser, 14 F.3d 615, 619 (D.C. Cir. 1994) (quoting Bowman, 419 U.S. at 285). Simply put, a court should only determine whether "the decision making process was deficient, not whether [the] decision was correct." Dickson v. Secretary of Defense, 68 F.3d 1396, 1405 (D.C. Cir. 1995), (citing Kreis, 866 F.2d at 1511).

The plaintiff bears the heavy burden of showing by "cogent and clearly convincing evidence that the military decision was the product of a material legal error or injustice." McDougall v. Widnall, 20 F. Supp. 2d 78, 82 (D.D.C. 1998) (citing Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir.), cert. denied, 479 U.S. 852 (1986); Walker v. Shannon, 848 F. Supp. 250 (D.C. Cir. 1994); Dorl v. United States, 200 Ct. Cl. 626, 633 (1973)). In order for the plaintiff to meet this high burden, the Court must also "overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith," because there is a "strong presumption that the personnel involved in the decision making process have faithfully discharged their duties." Smith v. Dalton, 927 F. Supp. 1, 4-5 (D.D.C. 1996); see also Mozur v. Orr, Secretary of the Air Force, 600 F. Supp. 772, 781 (E.D. Pa. 1985).

## ARGUMENT

I.    **Plaintiff's Claims Must Be Dismissed As Barred By The Statute Of Limitations.**

"Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "The right of action first accrues on the date of final agency action." Sendra Corp. v. Magraw, 111 F.3d 162, 165 (D.C. Cir. 1997); see also Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 56 (D.C. Cir. 1987) ("A cause of action against an administrative agency "first accrues," within the

meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court.").

Plaintiff was not selected for promotion to senior master sergeant (E-8) at the 93S8 board in March 1992. Compl. ¶ 6; AR at 304. The panel members on the 93S8 board scored Plaintiff's record as a 367.50, which was 30 points lower than the score her record received in 1991 at the 92S8 board. Compl. ¶ 13; AR at 304. Plaintiff then requested that the AFBCMR retroactively promote her to E-8 in September 1993, alleging her nonselection for promotion was the result of improper scoring, sabotage, or unjust administrative error. AR at 30. The AFBCMR denied her request for relief on December 14, 1993. AR at 22.

Plaintiff made multiple inquiries to various members of Congress concerning her case. Compl. ¶ 10. At the request of Congressman D. Floyd Spence, the Air Force convened a special evaluation board in 1996 to determine the relative position of Plaintiff's record compared to other military members who also experienced a board score drop of 30 points or more between the 92S8 and 93S8 boards. The special evaluation board panel scored Plaintiff's record as a 390. Compl. ¶¶ 11-12, 14-16; AR at 13, 466.

Using the results from the special evaluation board, in January 1998, Plaintiff requested that the AFBCMR retroactively promote her to the rank of senior master sergeant (E-8). Compl. ¶¶ 5, 18; AR at 9. The AFBCMR reconsidered her case, but after determining that relief was not warranted, denied her request on April 29, 1998. Compl. ¶ 19; AR at 2-8. Thus, Plaintiff's six-year statute of limitations for filing suit began to run on that date, and pursuant to 28 U.S.C. § 2401(a), Plaintiff was required to file her complaint before April 29, 2004. See Ortiz v. Secretary of Defense, 41 F.3d 738, 744 (D.C. Cir. 1994); Nihiser, 211 F. Supp. 2d at 128.

15

Because Plaintiff failed to file her complaint until May 16, 2005, more than seven years after her

right of action first accrued, Plaintiff's claims are barred by the statute of limitations.

Plaintiff appears to dispute that the AFBCMR's decision on April 29, 1998 constituted

final agency action.  She first alleges that on May 18, 1999, the AFBCMR provided an additional

opinion and findings, when it stated that (1) that the special evaluation board was convened

solely to determine Plaintiff's relative position compared to other members considered by the

93S8 board, and (2) that further consideration of her case was not warranted absent clear-cut

evidence that the special evaluation board was officially convened to provide Plaintiff promotion

reconsideration at the exclusion of the other members whose records were also reviewed. Compl.

¶ 21.  However, despite Plaintiff's allegations, neither of the AFBCMR's statements constituted a

new decision on her case.

First, the May 18, 1999 statements in no way constituted a decision of the AFBCMR.

Rather, on May 18, 1999, Mack M. Burton, Executive Director for the AFBCMR, merely sent

Plaintiff's counsel at the time, Ward K. Johnson, a letter in response to his inquiry for

information on Plaintiff's case.  AR at 540-41, 545-46.  In responding to Plaintiff's counsel's

questions, the letter stated:

> . . . as we previously informed you, the Air Force's position is the
> special evaluation board was convened solely to determine MSgt
> Morgan's relative position compared to other master sergeants
> considered for promotion by the original promotion board who had
> experienced a drop in board score of 30 points or more between the
> 92S8 and the 93S8 promotion cycles.
>
> In view of the foregoing, and in the absence of clear-cut evidence
> the special evaluation board was convened to officially provide
> reconsideration for promotion to MSgt Morgan, at the exclusion of
> the other nonselectees who experienced similar decreases in board
> scores by the same board panel, further consideration of her case is

16

not warranted.

AR at 546.

Moreover, the information contained in the May 18, 1999 letter was not new.  In the advisory opinion used by the AFBCMR in its April 29, 1998 decision, the special evaluation board's purpose was described as determining Plaintiff's relative position compared to other members also experiencing a 30-point board score drop between the 92S8 and 93S8 boards.  AR at 466.  The AFBCMR described the special evaluation board "as an unofficial evaluation board" and a "mock board" that was convened "to evaluate certain records of those individuals who had received a 30-point decrease in points between the 92S8 and 93S8 cycles."  AR at 7.  This information was communicated to Plaintiff's counsel in a letter dated April 14, 1999, which stated:

> It was never intended that MSgt Morgan's [special evaluation board] scores to be combined with her weighted factors score from the 93S8 cycle to determine her qualification for promotion to senior master sergeant.  As indicated earlier, this special review was performed for the sole purpose of determining her relative position when compared with the other records experiencing a drop in board score of 30 points or more from the 92S8 to the 93S8 cycles.  Consequently, the AFBCMR was not persuaded that the higher score assessed by the special panel should have resulted in her being selected for promotion to SMSgt during the 93S8 cycle.

AR at 539.

Plaintiff now further alleges that final agency action on her case did not occur until 2003.  According to Plaintiff, on June 9, 2003, she sought review of her case, and final agency action occurred on September 4, 2003 "when Defendant's delegee reviewed the case and denied relief."  Compl. ¶ 22.  Presumably, Plaintiff is referencing a June 9, 2003 letter, which she sent to James G. Roche, Secretary of the Air Force, asking for help with her case and alleging the AFBCMR

17

was in "Contempt of Congress" when it denied her request for retroactive promotion.  AR at

573-74.  She also alleged misconduct by Mr. Burton, the Executive Director of the AFBCMR,

because he "deceived/manipulated" two former Secretaries of the Air Force on the merits of her

promotion request.  Id.[4]

On July 9, 2003, Mr. Burton responded to Plaintiff's letter to Secretary Roche.  AR at

575.  The response stated that it would be inappropriate for anyone to unilaterally intervene on

her behalf, and since there was the absence of any new relevant evidence, further review of her

case was not possible.  Id.  On September 4, 2003, Michael L. Dominguez, Assistant Secretary of

the Air Force for Manpower and Reserve Affairs, also responded to Plaintiff.  Mr. Dominguez

informed Plaintiff that there was no basis to set aside either the 1993 AFBCMR decision or its

1998 reconsideration decision, as both panels of the AFBCMR considered all available evidence

and conscientiously acted on her case.  AR at 577.

Accordingly, although later communications regarding Plaintiff's case occurred, the

AFBCMR's decision on April 29, 1998 denying Plaintiff's request for promotion constituted the

final agency action in this case.  Since that time, Plaintiff's case has never been reopened by the

Air Force.  Subsequent correspondence may have discussed the merits of Plaintiff's case when

her requests for reconsideration and intervention were denied, but this "does not necessarily

mean the agency has reopened the proceedings."  Sendra Corp., 111 F.3d at 167 (citing Interstate

Commerce Comm'n v. Brotherhood of Locomotive Engineers, 482 U.S. 270, 280-81 (1987)).

---

[4]  This request for intervention in her case was one of many sent to the Secretary of the
Air Force by Plaintiff, her attorney, and members of Congress.  See AR at 505-07, 523-24, 531-
33, 535-36, 573-74, 590-91, 643, 694.  These requests were denied since Plaintiff's case had
previously been adjudicated by the AFBCMR.  AR at 529-30, 534, 575, 592, 637.

Only if the Air Force had "clearly stated or otherwise demonstrated" that Plaintiff's case was being reopened would her case have been officially reopened, creating a new final order subject to judicial review. Sendra Corp., 111 F.3d at 167 (citing Morris v. Sullivan, 897 F.2d 553, 558 (D.C. Cir. 1990)). See also Robinson v. Dalton, 45 F. Supp. 2d 1, 8 (D.D.C. 1998). The record clearly shows that subsequent to April 29, 1998, the AFBCMR and senior Air Force officials never "clearly stated or otherwise demonstrated" that Plaintiff's request for retroactive promotion was being reopened. In fact, to the contrary, Defendant always stressed to Plaintiff that absent new relevant evidence, intervention or reconsideration of her case was inappropriate due to the AFBCMR's prior adjudication. See AR at 529-30, 534, 575, 592, 637. Because final agency action occurred on April 29, 1998 and Plaintiff failed to file her complaint within the six years required under 28 U.S.C. § 2401, the Court lacks subject matter jurisdiction over her claims. The Court should dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1).

## II.    Plaintiff's Request For Retroactive Promotion Is Nonjusticiable.

Plaintiff's complaint seeks an order from the Court, directing Defendant to retroactively promote Plaintiff to the rank of senior master sergeant (E-8). Compl. ¶ 24. However, any such request for relief is nonjusticiable and must be dismissed.

A discussion regarding the justiciability of a challenge to a military personnel decision necessarily begins with the United States Supreme Court's oft-quoted statement that:

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which [complaints of discrimination, favoritism, and other objectionable conduct] can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army

19

> matters as the Army must be scrupulous not to intervene in judicial
> matters.

Orloff v. Willoughby, 345 U.S. at 93-94.  "The Constitution vests '[t]he complex, subtle, and

professional decisions as to the composition, training, equipping, and control of a military force'

exclusively in the legislative and executive branches."  Kreis, 866 F.2d at 1511) (quoting

Gilligan v. Morgan, 413 U.S. 1, 10 (1973)).  Thus, the judiciary is reluctant to interfere with

personnel decisions made regarding the military.  The Court of Appeals has stated that judicial

deference is at its peak in the context of military personnel matters, such as promotion decisions.

See Dilley v. Alexander, 603 F.2d 914, 920 (D.C. Cir. 1979); VanderMolen v. Stetson, 571 F.2d

617, 627 (D.C. Cir. 1977).

Drawing on these principles, the Court of Appeals has held that a "request for retroactive

promotion falls squarely within the realm of nonjusticiable military personnel decisions." Kreis,

866 F.2d at 1511.  As aptly stated by the court:

> To grant such relief would require us to second-guess the Secretary's
> decision about how best to allocate military personnel in order to
> serve the security needs of the Nation.  This court is not competent to
> compare appellant with other officers competing for such a
> promotion.  Not only is that task inherently unsuitable to the judicial
> branch, but also Congress has vested in the Secretary alone the
> authority to determine whether the original selection boards erred in
> comparing appellant to the other candidates for promotion.

Id.  See Homer v. Roche, 226 F. Supp. 2d 222, 225(D.D.C. 2002) ("the Court is powerless to act

insofar as plaintiff asks that the Court order his promotion").

In this case, Plaintiff's request for retroactive promotion to the rank of senior master

sergeant (E-8) clearly falls within this well-settled precedent.  Under Kreis, the relief sought is

necessarily "within the realm of nonjusticiable military personnel decisions." Kreis, 866 F.2d at

1511. Therefore, Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

**III.    The AFBCMR's Decision Based On The Record In This Case Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Otherwise Contrary To Law, And The Court Should Grant Summary Judgment For Defendant.**

Even if this Court were to examine any of Plaintiff's claims in this case, the AFBCMR's denial of Plaintiff's request for retroactive promotion to the rank of E-8 was not arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law.  As evidenced by the lengthy administrative record, the AFBCMR had substantial evidence to support its denial of Plaintiff's requests, and the Court should uphold its decision under the APA.

**A.    Plaintiff's Requests and the AFBCMR's Denial Of Relief**

Since Plaintiff failed to be selected for promotion at the 93S8 board, Plaintiff's case has been reviewed at various levels of the Air Force.  Initially, Plaintiff blamed her nonselection on "institutionalized racial and sexual discrimination," and she requested a congressional inquiry. AR at 80-81.  The Department of Defense, Office of the Inspector General ("DoD/IG") conducted a technical review[5] of Plaintiff's board score and found no merit in her claims.  AR at 82-83.  The DoD/IG found that although Plaintiff's 92S8 board score was higher than her 93S8 board score, the difference in her overall standing was not significant, as she was ranked 130th among 938 eligibles at the 92S8 board and 134th among 985 eligibles at the 93S8 board. See AR at 84, 315.

Plaintiff filed her first application for relief with the AFBCMR on September 12, 1993.

_____

[5]  Colonel Thomas W. Arbaugh, Director of Personnel Program Management at the Air Force Personnel Center, conducted the technical review in April 1992.  AR at 315.

AR at 30.  Alleging that her nonselection to E-8 was due to improper scoring, sabotage, or unjust

administrative error, Plaintiff requested retroactive promotion as of the 93S8 board.  In addition,

Plaintiff alleged that she had been coerced into leaving the First Sergeant career field.  AR at 34-

38.  The AFBCMR, in a decision dated December 14, 1993, found that "[i]nsufficient evidence

has been presented to demonstrate the existence of probable error or injustice."  AR at 27.

According to the AFBCMR, there was no evidence that Plaintiff's records had been improperly

scored, and a thorough review of the 93S8 board's promotion process indicated that Plaintiff's

records were correct at the time she was considered for promotion.  Moreover, Plaintiff's past

promotion board scores were found to be irrelevant to her 93S8 board score, as scores vary

substantially among different promotion boards.  See AR at 27-28.  Citing the 1992 technical

review of the 93S8 board, the AFBCMR also noted that Plaintiff's relative standing to other

promotion eligibles did not dramatically change from the 92S8 board to the 93S8 board.  See AR

at 28, 315.

In December 1996, at the request of Congressman Floyd D. Spence, the Air Force

convened a special evaluation board to determine Plaintiff's relative position when compared

with other members who experienced a 30-point or greater drop in their board scores between the

92S8 and 93S8 boards.  See Compl. ¶¶ 11-12, 14-16; AR at 13; 466, 518-19.  Of the 131 records

receiving at least a 30-point drop, 19 records were either not retrievable or incomplete, and 34

records were eliminated from the special review based on obvious discrepancies, such as having

negative information entered after the 92S8 board.  The special evaluation board evaluated 78

records using the same procedures as a regular evaluation board would use to score applicants'

records.  The panel members mirrored the profile of the original 93S8 panel and were not

informed of the specific purpose of the evaluation. The special evaluation board panel scored

Plaintiff's record as a 390.00. Id. The Air Force notified Congressman Spence about the results

of the special evaluation board on January 17, 1997. See AR at 13-14, 518-19.

Based on these results of the special evaluation board, on January 23, 1998, Plaintiff

requested that the AFBCMR promote her to the rank of E-8 as if she had been selected by the

93S8 board, that she be reinstated into the First Sergeant career field, and that the AFBCMR give

her the option of being reinstated into the Air Force.[6] See Compl. ¶¶ 5, 18; AR at 9. In response,

on March 5, 1998, the Air Force Personnel Center's Enlisted Promotions & Military Testing

Branch provided an advisory opinion on Plaintiff's promotion request to the AFBCMR. AR at

466-67. The advisory opinion noted that the special evaluation board scored Plaintiff's record at

390.00, placing her record in the top 23% of the 78 records reviewed.[7] AR at 466. By

comparison, of the 131 records experiencing a 30-point or greater drop between the 92S8 and

93S8 boards, 29 of the records received 93S8 board scores that were equal to or higher than

Plaintiff's 93S8 board score of 367.50. This placed Plaintiff's record in the top 22% of these 131

records. Id. Thus, the opinion concluded that "[t]he fact that her record ended up in virtually the

same position among the group of records reviewed by this [special evaluation board] panel

_____

[6] The AFBCMR may reconsider an application based on newly discovered relevant evidence that was not available when the application was previously considered. If the request contains new evidence, it is referred to the AFBCMR for a decision. The AFBCMR may deny reconsideration if the request does not meet the criteria for reconsideration. 32 C.F.R. § 865.6.

[7] None of the 78 members whose records were reviewed by the special evaluation board had been selected for promotion to E-8 at the 93S8 board. The advisory opinion correctly noted that Plaintiff's score of 390.00 was based on a comparison of her record with those of other nonselectees. At no time during the special evaluation board review was Plaintiff's record compared with the record of individuals who had been selected for promotion during the 93S8 cycle.

affirms the relativity which was established by the original 93S8 board." Id. Logically, if

Plaintiff's record had been improperly evaluated at the 93S8 board, her special evaluation board

score would have been noticeably higher than the other records similarly evaluated or at least her

record would have been higher on the order of merit. AR at 467. Thus, "the results of this

special evaluation panel only served to further validate the fairness and accuracy of the original

93S8 board." Id. The opinion also noted that because the records reviewed by the special

evaluation board did not include all 985 records constituting the entire First Sergeant career field

population that were scored at the 93S8 board, Plaintiff's 390.00 score could not be used to assert

a higher position than those who were scored above her for the 93S8 board. Id.

In a memorandum to the AFBCMR dated March 18, 1998, Plaintiff responded to the

advisory opinion, asserting that the special evaluation board had demonstrated her records were

unfairly evaluated at the 93S8 board, and that she should be retroactively promoted to the rank of

E-8. AR at 470-74.

On April 29, 1998, the AFBCMR completed its reconsideration of Plaintiff's case and

denied her application for records correction. See Compl. ¶ 19; AR at 2-8. The AFBCMR

concluded that insufficient relevant evidence was presented "to demonstrate the existence of

either an error or injustice warranting favorable action on [Plaintiff's] request . . ." AR at 7. The

AFBCMR stated:

> We find the extraordinary actions by the Air Force in convening an
> unofficial evaluation board to evaluate certain records of those
> individuals who had received a 30-point decrease in points
> between the 92S8 and 93S8 cycles extremely troublesome. And,
> had the applicant attained the highest score of the records scored by
> this mock board, we may have reached an entirely different result.
> However, after carefully reviewing the scores of the 78 records that
> were evaluated, we are not persuaded the score received by the

24

applicant results in the inescapable conclusion that she should have received a sufficient score to have been a selectee for senior master sergeant during the 93S8 cycle. As noted by the Air Force, her receipt of a 390 score by the mock evaluation board placed her in the top 23% of the 78 records scored. By comparison, of the 131 records experiencing a drop in board score of 30 points or more between the 92S8 and 93S8 boards, 29 of the original 93S8 board scores were equal to, or higher than, the applicant's 367.50. Furthermore, because the makeup of the review group records did not include the entire First Sergeant population for the 93S8 cycle (985 records), the 390.00 score she received by this panel cannot be used to assert a higher position than among the top 61% for the 93S8 board (there were 534 or 54% who had a higher board score than applicant's 367.50 and 65 or 7% who had the same board score as she). The fact that her record ended up in virtually the same position among the group of records reviewed by this panel affirms the relativity which was established by the original 93S8 board.

Id.

According to the AFBCMR, Plaintiff was treated no differently than any other member who competed for promotion at the 93S8 board and there was no evidence that her records were improperly or inaccurately scored. Id. Furthermore, the AFBCMR found that Plaintiff failed to submit "one shred of evidence" to indicate that the 93S8 panel members did not perform their sworn duty of serving without prejudice or partiality. Thus, "to promote the applicant based solely on supposition would be grossly unfair to the hundreds of senior enlisted members that have received variances in scores between promotion cycles in the past." Id.

Despite the fact that the AFBCMR's April 29, 1998 decision reconsidered and denied Plaintiff's request for promotion, since that time, Plaintiff has made repeated attempts to have the AFBCMR's decision reconsidered.

In July 1998, Plaintiff's counsel[8] at the time, Ward K. Johnson, wrote a letter to F. Whitten Peters, Acting Secretary of the Air Force, asking him to overturn the AFBCMR's decision. AR at 505-07. The letter asserted that the AFBCMR misapplied its own rules and did not correctly identify the facts.[9] AR at 505. The letter also asserted that the AFBCMR was misinformed about the legitimacy of the special evaluation board, as it was not an "unofficial evaluation board" or "mock board". Id. Plaintiff's counsel wrote similar letters to Congress, and in October 1998, Senator Dorgan, Senator Conrad, and Congressman Pomeroy expressed their concern in the matter to Secretary Peters. AR at 523-24. They inquired why the AFBCMR did not promote Plaintiff since her weighted score from the 93S8 board, coupled with the board score from the special evaluation board, surpassed the promotion cutoff score at the 93S8 board. See AR at 508-523. They asked Secretary Peters to consider overturning the AFBCMR's decision or to provide other equitable relief to Plaintiff. AR at 523-24.

On December 22, 1998, Secretary Peters declined to intervene in Plaintiff's case. See Compl. ¶ 20; AR at 529-30. Secretary Peters stated that although the special evaluation board arrived at a board score of 390.00 for Plaintiff's record, the AFBCMR was not persuaded that she would have received a combined score sufficient for promotion at the 93S8 board. AR at 529. As explained by Secretary Peters:

> Her receipt of a 390 score by the unofficial evaluation board placed
> her in the top 23% of the 78 records scored. By comparison, of the
> 131 records experiencing a drop of 30 points or more between the

---

[8]  None of the references to Plaintiff's counsel in this memorandum refer to Plaintiff's current counsel in this matter.

[9]  According to Plaintiff's counsel's letter, the combined score required for promotion to E-8 at the 93S8 board was 706.64. Therefore, Plaintiff should be promoted, as her 317.73 weighted score at the 93S8 board plus her 390.00 board score totaled 707.73. AR at 506.

> 92S8 and 93S8 boards (Sergeant Morgan's promotions boards), 29
> of the original 93S8 board scores were equal to or higher than hers,
> placing her record in the top 22% of the 131 records. The fact that
> Sergeant Morgan's record ended up in virtually the same position
> among the group of records that the special evaluation panel
> reviewed affirms her relative position that the original board
> established.

Id. Secretary Peters concluded that there was no evidence that Plaintiff's records were

improperly or inaccurately scored and that there was no basis for him to unilaterally intervene on

her behalf. To do so would "constitute preferential treatment, thereby undermining the integrity

of both the correction of records and the promotion processes." AR at 530.

In January 1999, Plaintiff's counsel again asked Secretary Peters to overturn the

AFBCMR's decision. AR at 531-33. Except for the date, the request letter was identical to

Plaintiff's counsel's July 1998 letter. See AR at 505-07. In March 1999, Secretary Peters again

responded to Plaintiff that her case had been "reviewed exhaustively at all levels," adjudicated by

the AFBCMR, and there were no irregularities in her promotion consideration. Thus, it would be

inappropriate to intervene on Plaintiff's behalf. Id. AR at 534.

Refusing to accept Defendant's decision, Plaintiff's counsel sent another letter to

Secretary Peters on March 8, 1999. AR at 535-36. Reiterating that Plaintiff's board score at the

special evaluation board should be considered with her weighted score from the 93S8 board,

Plaintiff's counsel requested an opportunity to meet with Secretary Peters or have a telephone

conference with him. AR at 535. On April 14, 1999, Mack M. Burton, Executive Director for

the AFBCMR, responded to this letter. Citing the advisory opinion from the Enlisted

Promotions & Military Testing Branch, the Executive Director repeated to Plaintiff's counsel the

AFBCMR's conclusion that the special evaluation board "validated the fairness and accuracy of

the original 93S8 board." AR at 538; see also AR at 466-67. Moreover, it was never intended for Plaintiff's special evaluation board score to be combined with her weighted score from the 93S8 board. Instead, the special evaluation board was "for the sole purpose of determining her relative position when compared with the other records experiencing a drop in board score of 30 points or more from the 92S8 to the 93S8 cycles," and it could not be concluded the 93S8 board should have selected her for promotion. AR at 539.

Plaintiff's counsel replied on April 20, 1999, asserting that he did not understand the degree to which Plaintiff's board score dropped between the 92S8 and 93S8 boards and why Plaintiff's special evaluation board score could not be combined with her weighted score from the 93S8 board. AR at 540-41. The letter also alleged that the purpose of the special evaluation board was not to compare her record with those not selected for promotion to E-8, but to give her a new board score. AR at 540.

On April 27, 1999, Senator Max Cleland wrote Secretary Peters, asking: (a) whether the special evaluation board was an official board, whose findings could impact on Plaintiff's promotion; (b) if official, whether Plaintiff's revised board score was combined with her weighted score from the 93S8 board; and (c) whether the substantial drop experienced by Plaintiff in her board score during the 93S8 board was an error that cost her a promotion. AR at 542. Defendant's Congressional Inquiry Division responded to this inquiry and informed the Senator that the 1996 special evaluation board was an unofficial board convened in response to a request from Congressman Spence. The letter explained that:

> Congressman Spence's specific request was that the Air Force "complete a survey of the approximately 12 percent of the 686 first sergeants who met both the 92S8 and 93S8 promotion boards and experienced the same or greater level of reduction in board score.

28

> [Congressman Spence was] interested in determining how many of
> the records show[ed] a negative entry to the records between the
> two boards.  And for those remaining records without a negative
> entry, an assessment as to where Master Sergeant Morgan's record
> would be placed on a top to bottom priority listing starting with the
> record that had improved the least since meeting the 92S8 board
> and ending with the record that improved the most since the 92S8
> board."

AR at 543.  Senator Cleland was also informed that evaluation board panel members make

subjective determinations of all aspects of a member's record, but that procedures are in place to

ensure consistent scoring of records by the panel.  Nonetheless, "[a]*ctual scores may vary*

*between panels* (emphasis in original)."  Id.  See AR at 287.  The explanation continued:

> What is important, however, is the relative position that the score
> establishes for individuals in their [career field].  Also, a score
> received in one year is not a baseline from which later boards
> begin.  Each board arrives at its own scoring standard and, as long
> as everyone competing in a [career field] is looked at under the
> same standard, fair and equitable consideration is ensured.  Thus,
> even though the 93S8 Evaluation Board panel may have evaluated
> Sergeant Morgan's record lower than the previous board, the
> important thing is that they were required to be consistent in their
> evaluation of each record in her [career field].

AR at 543-44.

Additionally, on May 18, 1999, the Executive Director of the AFBCMR responded to

Plaintiff's counsel's April 1999 letter.  See Compl. ¶ 21; AR at 545-46.  The letter stated that

despite Plaintiff's counsel's confusion, there was no way to determine why Plaintiff's board

score decreased 30 points at the 93S8 board, as each panel member made a subjective evaluation

of all aspects of her record.   AR at 545.  All records within a career field are evaluated by a

single panel and under the same standard.  Since some panels award high scores, while others

award low scores, the actual score received is not significant.  What is important is the relative

position a score establishes for a member compared to others in the career field. Thus, even

though the 93S8 board evaluated Plaintiff's record lower than the 92S8 board, "the important

thing is that they were required to be consistent in their evaluations of each record in her [career

field]." Moreover, the 93S8 panel "is presumed to have performed its duty lawfully and in good

faith." Id. Although the AFBCMR did not dispute Plaintiff's contention that her special

evaluation board score, if combined with her 93S8 weighted score, would have resulted in

selection for promotion at the 93S8 board, the AFBCMR stated that the special evaluation board

was convened solely to determine Plaintiff's relative position among the other members who

experienced a 30-point or more board score reduction between the 92S8 and 93S8 boards. See

Compl. ¶ 17; AR at 546. Again the AFBCMR reiterated the fact that

> . . . 22% of those records  [scored by the 93S8 board] were scored
> equal to or higher than MSgt Morgan's original board score of
> 367.50 and 23% [of the records scored by the special evaluation
> board] were scored higher than the 390.00 she received from the
> special evaluation board. The fact that 23% of the records scored
> by this board, consisting of entirely different panel members, were
> scored higher that the 390.00 she received indicates that, even
> among the 78 nonselectees, MSgt Morgan's record was not
> evaluated as one of the best. In view of this, and in consideration
> of the fact that only 6.17% of the candidates could be selected for
> promotion during the 93S8 cycle, it is not at all surprising that she
> would be a nonselectee.

AR at 546. Based on this analysis, and in the absence of clear-cut evidence to the contrary,

further reconsideration of her case was not warranted. Id.

Despite all of Plaintiff's failed attempts to have her case reconsidered, on June 9, 2003,

Plaintiff asked James G. Roche, Secretary of the Air Force, for assistance. Compl. ¶ 22; AR at

573-74. Plaintiff alleged that the AFBCMR was in "Contempt of Congress" by denying her

request for promotion and that the Executive Director of the AFBCMR committed misconduct

by deceiving/manipulating former Secretaries of the Air Force as to the merits of her promotion request. Plaintiff's letter was referred to the AFBCMR. In a response dated July 9, 2003, the Executive Director of the AFBCMR informed Plaintiff that her case had been adjudicated and it would be inappropriate for anyone unilaterally to intervene. AR at 575. Moreover, in the absence of new relevant evidence, further review by the AFBCMR was not possible. Id. Michael L. Dominguez, Assistant Secretary of the Air Force for Manpower and Reserve Affairs, also responded to Plaintiff. Similarly finding no basis to set aside the AFBCMR's decision, he stated that honest disagreement with a congressman on the merits of her case does not constitute contempt towards Congress or malfeasance of office by Mr. Burton, the Executive Director of the AFBCMR. AR at 577.

On September 10, 2003, Plaintiff asked Senator John McCain for assistance in her case. AR at 578. Senator McCain followed up with a letter to the Air Force, asking that Plaintiff be treated fairly and appropriately. AR at 591. In October 2003, Defendant's Congressional Inquiry Division responded to Senator McCain and informed him that since the AFBCMR had adjudicated Plaintiff's case, it would be inappropriate for the Secretary of the Air Force to intervene on her behalf. In addition, the response stated that numerous senior Air Force officials had addressed Plaintiff's case and until she submitted new relevant evidence meeting the criteria for reconsideration, further AFBCMR action on her case was not possible. AR at 592.

On March 11, 2004, a different attorney for Plaintiff, Gary R. Myers, sent a letter to the Director of the Air Force Review Boards Agency alleging that the special evaluation board was a lawfully created panel within the discretion of the Secretary of the Air Force. AR at 597. According to Plaintiff's counsel's letter, the results of the special evaluation board were binding

31

upon the Air Force.  Therefore, the special evaluation board score she received in 1996, when

added to her weighted score received at the 93S8 board, required Plaintiff's promotion to E-8.

AR at 598.  On April 13, 2004, the Executive Director of the AFBCMR responded that because

the "reiteration of facts previously addressed by the Board, uncorroborated personal observations,

or additional arguments on the evidence of record are not grounds for reopening a case,"

reconsideration could not be granted.  AR at 636.

On April 29, 2004, Plaintiff's counsel asked the Secretary of the Air Force to intervene in

Plaintiff's case "prior to litigation."  AR at 643.  Similar to everyone's previous responses in this

case, Victor R. Donovan, Legal Advisor for the Air Force Review Boards Agency, informed

Plaintiff's counsel that his request for reconsideration of Plaintiff's case had previously been

considered and denied.  AR at 637.  In June 2004, Plaintiff's counsel asked Donald Rumsfeld,

Secretary of Defense, to urge the Secretary of the Air Force to review Plaintiff's case.  AR at

639.  In July 2004, Plaintiff herself also asked Secretary Rumsfeld for his assistance in obtaining

her retroactive promotion.  AR at 638.

In February 2005, Congressman (then retired) Dellums asked Peter B. Teets, Acting

Secretary of the Air Force, to intervene in Plaintiff's case.  AR at 694-95.  He suggested that

since Plaintiff's board score had been rescored in excess of the cutoff score required for

promotion [at the 93S8 board], the issue of her promotion to E-8 should be resolved in her favor.

AR at 694.

On March 14, 2005, Plaintiff faxed a request to the AFBCMR for reconsideration of its

1998 decision.  Plaintiff based her request on Congressman Dellums' February 2005 letter and

the AFBCMR's May 18, 1999 letter.  See AR at 545-46, 693.  The Executive Director of the

AFBCMR informed Plaintiff that the documents she provided would be forwarded to the AFBCMR for possible reconsideration.  AR at 703.  Subsequently, on April 7, 2005, Plaintiff's request for reconsideration was denied, as:

> . . . reconsideration is authorized only where newly discovered relevant evidence is presented which was not available when the application was originally submitted.  Additionally, the reiteration of facts previously addressed by the Board, uncorroborated personal observations, or additional arguments on the evidence of record are also not grounds for reopening a case.

AR at 704.

In April 2005, the AFBCMR responded to Congressman Dellums' inquiry and stated that the AFBCMR reconsidered Plaintiff's case in April 1998, but was not persuaded that the score Plaintiff received from the unofficial evaluation board substantiated that she would have been promoted to E-8 at the 93S8 board.  AR at 705.  The AFBCMR further responded that although Plaintiff requested reconsideration by the AFBCMR in March 2005, Plaintiff's submissions, including his (Dellums) letter, provided no newly discovered relevant evidence since the information contained therein had previously been considered by the AFBCMR.  Id.  Moreover, as previously communicated to Plaintiff, since the AFBCMR already adjudicated Plaintiff's case, it would be inappropriate for the Acting Secretary to intervene on her behalf, as this would constitute preferential treatment and undermine the integrity of the records correction process.  Id.

Plaintiff filed her lawsuit on May 16, 2005.  See Compl.

**B.      The AFBCMR's Denial Of Plaintiff's Request For Promotion Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Otherwise Contrary To Law.**

Under the "unusually deferential application of the 'arbitrary and capricious' standard of

the APA," Musengo v. White, 286 F.3d at 538 (quoting Kreis v. Secretary of the Air Force, 866

F.2d at 1514), the AFBCMR's April 29, 1998 decision denying Plaintiff's request for promotion

was clearly supported by the administrative record in this case.  The AFBCMR stated there was

not a "shred of evidence" to indicate that the 93S8 board panel members improperly discharged

their duties.  AR at 7.  Because an "officer seeking a correction must prove 'clearly and

convincingly' . . . that '[a]ction is warranted to correct a material error, inaccuracy, or injustice,'"

the AFBCMR properly denied Plaintiff relief.  Cone v. Caldera, 223 F.3d at 792-93.

　　　The crux of Plaintiff's argument to the AFBCMR was that the special evaluation board

was an official board convened in 1996 for the purpose of reconsidering her promotion to E-8.

AR at 540, 598.  However, beyond her bald assertion, Plaintiff provided no evidence to prove

that the special evaluation board was an official promotion board.  To the contrary, the AFBCMR

concluded that the special evaluation board was "unofficial" and a "mock" board.  AR at 7.  This

conclusion was consistent with the advisory opinion provided to the AFBCMR when it

reconsidered Plaintiff's case in 1998.  According to the advisory opinion:

> On 16 Dec 96, at the direction of AF/DPX and the insistence of
> U.S. Congressman Floyd D. Spence, AFPC convened a special
> evaluation panel.  The basis of Congressman Spence's request was
> to determine MSgt Morgan's relative position when compared with
> the other records experiencing a drop in board score of 30 points or
> more from the 92S8 to the 93S8 promotion cycle.

AR at 466.  Moreover, when Defendant notified Congressman Spence of the special evaluation

board results, it never stated that the results in any way impacted Plaintiff's requested promotion

to E-8.  AR at 13-14.  Defendant informed Congressman Spence only that Plaintiff's record was

evaluated against other similarly situated records and that the board's order of merit indicated

that 17 out of 78 records were scored higher than Plaintiff's, 9 records scored the same, and 60

records scored lower.  AR at 15.

The AFBCMR found that Plaintiff's request for reconsideration in light of the results of the special evaluation board failed to present "newly discovered relevant evidence," and failed to demonstrate "the existence of probable material injustice," and thus the AFBCMR denied Plaintiff's request for retroactive promotion.  AR at 1.  The AFBCMR opined that if Plaintiff had received the highest board score at the special evaluation board, they might have reached a different result.  However, after reviewing the scores of the 78 records, the AFBMCR was " not persuaded the score received by [Plaintiff] results in the inescapable conclusion that she should have received a sufficient score to have been a selectee for senior master sergeant during the 93S8 cycle." AR at 7.  Of importance to the AFBCMR was the fact that Plaintiff's 390.00 board score placed in the top 23% of the records scored by the special evaluation board.  In relative terms, these results placed Plaintiff in a similarly situated position as did Plaintiff's board score from the 93S8 board when she was in the top 22% of the 131 records who dropped 30 points or greater from the previous year's promotion board.  The fact that Plaintiff's record ended up in virtually the same position among the group of records reviewed by the special evaluation board affirmed the relativity which was established by the original 93S8 board.  Id.  After the AFBCMR concluded that Plaintiff was treated no differently than any other member who competed for promotion at the 93S8 board, the AFBCMR properly applied its discretion and denied Plaintiff's application for relief.  Id.; see also Kisser, 14 F.3d at 619; Bowman, 419 U.S. at 285 (the AFBCMR's decision must be upheld if "the agency has articulated 'a rational connection between the facts found and the choice made.'").  All correspondence which occurred after the April 29, 1998 decision only served to respond to Plaintiff's numerous inquiries and to

further explain the AFBCMR's decision denying Plaintiff relief.

The administrative record supports the conclusion that a rational connection existed between the facts found and the decision not to promote Plaintiff. Thus, the Court should uphold the AFBCMR's decision. Dickson, 68 F.3d at 1405 (a court should only determine whether "the decision-making process was deficient, not whether [the] decision was correct"). For all of the reasons stated above and supported by the record in this case, this Court should grant summary judgment for Defendant as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests dismissal of Plaintiff's Complaint, or in the alternative, summary judgment for Defendant.

Dated: September 20, 2005          Respectfully submitted,

/s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. - Civil Division
Washington, D.C.  20530
(202) 514-7220

36

Of Counsel:
P. CHRISTOPHER CLARK
Lt Col, USAF
Air Force Legal Services Agency
General Litigation Division
1501 Wilson Blvd., 7th Floor
Arlington, VA  22209-2403
(703) 696-9119

## CERTIFICATE OF SERVICE

I certify that the foregoing **Motion To Dismiss, or in the alternative, For Summary Judgment** was served upon plaintiff pursuant to the Court's electronic filing system, addressed to:

**Harvey J. Volzer**
**216 South Patrick Street**
**Alexandria, VA 22314**

on this 20th day of September, 2005.

_____

MEGAN ROSE
Assistant United States Attorney
Judiciary Center Building, E-4220
Civil Division
555 4th Street, NW
Washington, D.C. 20530